IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHAD DeSPAIN SHEDDY, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | No. 3:12-CV-2804-M (BF) |
| § | |
| JPMORGAN CHASE BANK, N.A. and § | |
| BARRETT DAFFIN FRAPPIER § | |
| TURNER & ENGEL, LLP, § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Defendants JPMorgan Chase Bank, N.A. ("JPMC") and Barrett Daffin Frappier Turner & Engel, LLP ("Barrett Daffin") have filed separate motions pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss this civil action brought by Plaintiff Chad DeSpain Sheddy arising out of foreclosure proceedings initiated against his home in Coppell, Texas. For the following reasons, JPMC's motion should be granted in part and denied in part, and Barrett Daffin's motion should be granted in its entirety.

**Background**

In his Amended Complaint,[1] Plaintiff alleges that he financed the 2005 purchase of his home in Coppell, Texas with a mortgage loan from Long Beach Mortgage Company, an affiliate of Washington Mutual Bank, FA ("WAMU"). Plf. Am. Compl. at 2, ¶ 4. Plaintiff timely made all his required mortgage payments to WAMU from April 1, 2005 until September 2008, when the bank was closed by the Office of Thrift Supervision. *See id*. at 3, ¶ 6. Thereafter, Defendant JPMC

---

[1] Plaintiff's live pleading is his Amended Complaint (Doc. 13), which was filed with leave of court after a prior motion to dismiss was denied without prejudice.

acquired WAMU's assets and mortgage debt liabilities from the Federal Deposit Insurance Corporation, and Plaintiff continued to timely make his required mortgage payments to JPMC. *Id.*, ¶¶ 6-7.

According to Plaintiff, WAMU's agents wrongfully misappropriated funds from his February 2008 mortgage payment that were intended to fund a monthly escrow for property hazard insurance and stopped payment on the premium to the insurance company. *Id.*, ¶ 8. Plaintiff alleges that WAMU then determined that Plaintiff "was without insurance" and obtained a more expensive "force-placed" policy on Plaintiff's home. *Id.* at 4-5, ¶ 10. JPMC allegedly continued the force-placed policy through the fall of 2009 without notice to Plaintiff. *Id.* In October 2009, JPMC advised Plaintiff that his mortgage was $12,000 in arrears and threatened to foreclose on his home unless Plaintiff brought his account current. *Id.* at 3-4, ¶ 8. Plaintiff disputed the force-placed insurance charges and attendant penalties and demanded an accounting from JPMC. *Id.* Although JPMC failed to justify the charges to Plaintiff's satisfaction, Plaintiff continued to make mortgage payments to JPMC in an amount higher than his loan documents required from November 2009 through December 2011. *Id.* at 4-5, ¶¶ 9, 11. In February 2012, JPMC renewed its threat to foreclose on Plaintiff's home unless he paid $24,498.01 to settle the fees, interest, and penalties associated with more than $6,000 in allegedly improper force-placed insurance charges. *Id.* at 5, ¶ 13. When Plaintiff subsequently hired a lawyer to represent him, he was directed to contact JPMC's counsel Tom Misteli at Barrett Daffin. *Id.* at 6, ¶ 13. Misteli and Barrett Daffin refused to accept Plaintiff's evidence that the force-placed insurance charges, penalties, and interest were improper and sent Plaintiff an email threatening to "post [Plaintiff's home] for the July 3 foreclosure sale" if he did not pay the disputed charges in full by June 8, 2012. *Id.* at 7, ¶ 14.

2

Plaintiff filed the instant lawsuit in the 192nd District Court of Dallas County, Texas on August 1, 2012 asserting claims for breach of contract, promissory estoppel, negligence and negligent misrepresentation, violations of the Texas Debt Collection Act ("TDCA"), TEX. FIN. CODE § 392.001, *et seq.*, and usury. Defendants timely removed the case to federal court on the basis of federal question jurisdiction because JPMC is a nationally chartered banking institution and usury claims against such institutions are completely preempted by the National Bank Act, 12 U.S.C. §§ 85, 86. With leave of court, Plaintiff filed an amended complaint reasserting his claims for breach of contract, promissory estoppel, negligence and negligent misrepresentation, violations of the TDCA, and usury and adding new claims for violations of the federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2602, *et seq.*, and the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* Defendants have now filed separate motions to dismiss all of Plaintiff's claims and causes of action on grounds that Plaintiff has failed to state a claim upon which relief can be granted. Additionally, Barrett Daffin contends that Plaintiff's claims are barred by the doctrine of qualified immunity. Both motions have been fully briefed by the parties and are ripe for determination.

**Legal Standards**

A district court may dismiss a complaint for failure to state a claim "only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 618 (5th Cir.1992) (quoting *Barrientos v. Reliance Standard Life Ins. Co.*, 911 F.2d 1115, 1116 (5th Cir. 1990)). To survive dismissal, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough

specificity "to raise a right to relief above the speculative level[.]" *Id.*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)).

## Analysis

As an initial matter, it appears that Plaintiff has abandoned several of his claims against Barrett Daffin. In his response to the law firm's motion to dismiss, Plaintiff narrows his "primary causes of action" against Barrett Daffin to "violations of the Federal and Texas Debt Collections statutes and Texas state law claims for negligent misrepresentation." Plf. Resp. Br. at 3. He further fails to address any of Barrett Daffin's arguments that his claims for promissory estoppel, negligence, usury, or RESPA violations should be dismissed. Indeed, he fails to mention those claims at all. Accordingly, Plaintiff's claims against Barrett Daffin for promissory estoppel, negligence, usury, and RESPA violations should be deemed abandoned. *See Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (claim abandoned when plaintiff failed to defend it in response to motion to dismiss). The District Court should grant Barrett Daffin's motion to dismiss with respect to those claims.

Barrett Daffin and JPMC are also entitled to dismissal of Plaintiff's claims for negligent misrepresentation and violations of the FDCPA and the TDCA.[2] The elements of a negligent misrepresentation claim are (1) the defendant made a representation to the plaintiff in the course of the defendant's business or in a transaction in which the defendant had a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their businesses; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered pecuniary loss. *Nazareth Int'l Inc. v. J.C. Penney Co.*, 287 S.W.3d 452, 460 (Tex. App. -- Dallas 2009, pet. denied). In his amended complaint, Plaintiff generally alleges that JPMC and Barrett Daffin made "false [r]epresentations regarding the accuracy of it statements, claims, demands, notices, and filings based upon known or knowable facts." Plf. Am. Compl. at 14, ¶ 33. However, he does not identify any specific misrepresentation by either Defendant or allege facts showing how he detrimentally relied on such misrepresentation.

To the extent Plaintiff contends that Misteli's May 24, 2012 email contained alleged misrepresentations regarding his account balance and threats of foreclosure, *see id.* at 6-7, ¶ 14, Plaintiff does not allege that he relied on any information in the email or that he suffered pecuniary loss as a result.[3] He alleges instead that he disputed Barrett Daffin's statements and responded with

---

[2] Barrett Daffin argues in the alternative that all of Plaintiff's claims against it are barred by the doctrine of qualified "attorney" immunity. Barrett Daffin Br. at 4-5. However, it is not necessary to consider Barrett Daffin's immunity argument because Plaintiff has failed to state a claim upon which relief may be granted. Even assuming the doctrine applies, its reach does not appear to be as broad as Barrett Daffin claims. *See Hunt v. BAC Home Loans Serv., LP*, No. C-11-261, 2012 WL 219330, at *9-10 (S.D. Tex. Jan. 24, 2012) (denying dismissal of attorney defendants based on qualified attorney immunity for claims brought under the TDCA).

[3] In his response to Barrett Daffin's motion, Plaintiff alleges, for the first time, that an April 5, 2012 "reinstatement" letter from Barrett Daffin misrepresents his mortgage account balance and the status of his loan. *See* Plf. Resp. to Barrett Daffin Mot. at 4-5. Plaintiff is not entitled to add factual allegations to his complaint by way of his response. But even if he were, this new allegation does not salvage his claim because he does not allege that he relied

5

his own evidence to challenge the underlying calculations. *See id*. at 7-8, ¶ 16. Plaintiff concedes in his response that he hired an attorney and instigated litigation "in lieu" of accepting any misrepresentation by Barrett Daffin. *See* Plf. Resp. to Barrett Daffin Mot. at 12. The "potential resulting injury" Plaintiff identifies in his response -- a $1,000 increase in his mortgage payment -- was never realized. *See id.* Plaintiff's allegations are thus insufficient to state a claim for negligent misrepresentation. *See Biggersv. BAC Home Loans Serv., L.P.*, 767 F.Supp.2d 725, 734-35 (N.D. Tex. 2011) (generalized allegations of reliance are insufficient to support claim for negligent misrepresentation).

Nor are Plaintiff's allegations sufficient to state a claim against Barrett Daffin or JPMC under the FDCPA. The provisions of the FDCPA only apply to "debt collectors," which the Act defines as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Debt collectors fall into two categories: (1) those who collect debts as the "principal purpose" of their business, and (2) those who collect debts "regularly." *Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 41 (5th Cir. 2008). To state a plausible claim for relief under the FDCPA, Plaintiff must allege sufficient facts to show that Barrett Daffin and JPMC satisfy the statutory definition of "debt collector." *See Bent v. Mackie Wolfe Zientz & Mann, P.C.*, No. 3:13-CV-2038-D, 2013 WL 4551614, at *3 (N.D. Tex. Aug. 28, 2013) (dismissing FDCPA claim where allegations in the complaint failed to raise a reasonable inference that the defendant is a debt collector as defined by the Act).

---

on any misrepresentation contained in the April 5 letter or that he suffered pecuniary loss as a result of such reliance.

Here, Plaintiff's amended complaint conclusorily asserts that "Defendants engaged in a course of conduct constituting 'abusive, deceptive, and unfair debt collection practices' under subsections 1692(a) through (k) [of the FDCPA]." Plf. Am. Compl. at 19, ¶ 50. Plaintiff alleges that, during the course of performing "loan servicing activities" between February 2008 and August 2012, Defendants "made false representations of the character, amount, or legal status of Plaintiff's debt, ... threatened to take action that cannot be legally taken or that is not intended to be taken, ... used unfair or unconscionable means to collect or attempt to collect Plaintiff's debt, and ... attempted to collect interest, fees, charges, or expenses incidental to the principal debt by unfair and unconscionable means." *Id.* Plaintiff wholly fails, however, to allege that Barrett Daffin or JPMC is a "debt collector" for purposes of the FDCPA. Nor does he allege any facts which would show that the principal purpose of either Defendants' business is debt collection or that they regularly collected or attempted to collect debts. *See* 15 U.S.C. § 1692a(6). This failure is fatal to his FDCPA claims. *See Bent*, 2013 WL 4551614, at *3; *see also Garcia v. Jenkins/Babb LLP,* No. 3:11-CV-3171-N-BH, 2012 WL 3847362, at *6 (N.D. Tex. July 31, 2012), *rec. adopted*, 2012 WL 3846539 (N.D. Tex. Sept. 5, 2012) (holding that the plaintiffs' recitation of the statutory definition of "debt collector" without any facts in support was insufficient to plausibly allege that the defendants were debt collectors under the FDCPA).

Plaintiff asserts in his response to Barrett Daffin's motion that the law firm admitted it is a "debt collector" in written correspondence to him regarding his mortgage loan. Plf. Resp. to Barrett Daffin Mot. at 8. Plaintiff's amended complaint contains no factual allegations that would support such an assertion, and the April 5, 2012 "reinstatement" letter from Misteli, which includes a boilerplate disclaimer that "... THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO

COLLECT A DEBT," Plf. Am. Compl. at 4, is not properly before the Court because the only reference to it appears in Plaintiff's response to Barrett Daffin's motion.  Nor does Plaintiff's amended complaint contain any factual allegations to support his assertion that "the nature of [Barrett Daffin's] large debt collection practice" satisfies the statutory definition.  The amended complaint is wholly devoid of any allegation regarding the nature of Barrett Daffin's practice.

Moreover, courts in the Fifth Circuit have held that the term "debt collector" does not include lenders, the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned. *Gipson v. JPMorgan Chase,* No. 3:13-CV-2477-L, 2013 WL 3746003, at *2 (N.D. Tex. July 17, 2013) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208, *modified on reh'g on other grounds*, 761 F.2d 237 (5th Cir.1985)); *see also* 15 U.S.C. § 1692a(6)(F).  JPMC argues that it is not a debt collector for purposes of the FDCPA because Plaintiff does not allege that his mortgage was in default at the time JPMC acquired his loan.  JPMC Mot. at 15.  Plaintiff does not dispute this assertion.  Accordingly, Plaintiff has failed to plead facts sufficient to show that Defendants are debt collectors as defined by the FDCPA.  Barrett Daffin and JPMC are thus entitled to dismissal of Plaintiff's FDCPA claims.

Defendants are further entitled to dismissal of Plaintiff's claims under the TDCA.  The TDCA's definition of "debt collector" is broader than the FDCPA's and includes mortgage servicing companies and debt assignees as long as the mortgage was not in default at the time it was assigned by the originator. *Miller v. BAC Home Loans Serv., L.P.*, --- F.3d ----, 2013 WL 4080717, at *4 (5th Cir. Aug. 13, 2013). Section 392.301(a)(8) of the TDCA prohibits a debt collector from "threatening to take an action prohibited by law." TEX. FIN. CODE ANN. § 392.301(a)(8).  In his amended complaint, Plaintiff alleges that Barrett Daffin and JPMC violated this provision when they

8

threatened to foreclose on his property in the absence of any legal basis for doing so. Plf. Am. Compl. at 16, ¶¶ 41, 42. However, the TDCA does not prohibit a creditor from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." Tex. Fin. Code § 392.301(b)(3); *Verdin v. Fed. Nat'l Mortg. Ass'n*, --- F.App'x ----, 2013 WL 4126785, at *4 (5th Cir. Aug. 15, 2013). As Plaintiff does not dispute that the TDCA does not apply to Defendants' foreclosure efforts, Barrett Daffin and JPMC are entitled to dismissal of his claims under section 392.301(a)(8) of the TDCA.

Plaintiff also alleges that Barrett Daffin violated section 392.304(a)(8) and (a)(19) of the TDCA when it failed to produce original loan documentation in response to Plaintiff's request and failed to properly verify the amount of his debt prior to initiating foreclosure proceedings. Plf. Am. Compl. at 16, ¶ 42. Section 392.304(a)(8) prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding." TEX. FIN. CODE ANN. § 392.304(a)(8). Section 392.304(a)(19) is a catch-all provision that prohibits a debt collector from "using any other false representation or deceptive means to collect a debt." *Id*. §392.304(a)(19). "To violate the TDCA using a misrepresentation, 'the debt collector must have made an affirmative statement that was false or misleading.'" *Verdin*, 2013 WL 4126785, at *3 (quoting *Kruse v. Bank of N.Y. Mellon*, --- F.Supp.2d ----, 2013 WL 1294088, at *2 (N.D. Tex. Apr. 1, 2013)). Barrett Daffin's alleged failures to provide original loan documentation to Plaintiff and properly verify the amount of his debt do not involve any affirmative misrepresentations. *Cf. id.* (observing that a lender's refusal to provide a payoff quote is not an affirmative misrepresentation of the amount of debt). To the extent Plaintiff asserts in his responses to Defendants' motions that Barrett Daffin and JPMC violated sections

9

392.304(a)(8) and (a)(19) by "misrepresent[ing] the amount of his mortgage account balance on several separate occasions during the collection process," Plf. Resp. to Barrett Daffin Mot. at 8; Plf. Resp. to JPMC Mot. at 6, these are new allegations that do not appear in Plaintiff's amended complaint. *See* Plf. Am. Compl. at 16, ¶¶ 41, 42. Plaintiff is not entitled to add new claims to his complaint by way of his response. *Bennett v. JPMorgan Chase*, No. 3:12-CV-212-N, 2013 WL 655059, at *7 n.7 (N.D. Tex. Feb. 5, 2013), *rec. adopted*, 2013 WL 655054 (N.D. Tex. Feb. 22, 2013) (refusing to consider new claim raised for first time in response to motion to dismiss). Plaintiff has thus failed to state a claim for violations of the TDCA, and Barrett Daffin and JPMC are entitled to dismissal of those claims.

Plaintiff's promissory estoppel claims against JPMC should be dismissed because he has failed to identify a definite promise and because the claim is barred by the statute of frauds. Under the equitable doctrine of promissory estoppel, a person may be bound by a promise that he reasonably believed would induce action or inaction and that did induce the action or forbearance. *Martins v. BAC Home Loans Serv., L.P.*, 722 F.3d 249, 256 (5th Cir. 2013) (citing *Moore Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 937 (Tex. 1972)); *Hurd v. BAC Home Loans Serv., L.P.*, 880 F.Supp.2d 747, 761 (N.D. Tex. 2012) (Lynn, J.) (recognizing that promissory estoppel may be available as an affirmative cause of action to a promisee who has reasonably relied to his detriment on an otherwise unenforceable promise). In his amended complaint, Plaintiff alleges that he would have sought regulatory relief or taken judicial action earlier had he not detrimentally relied on repeated assurances from JPMC that "all improperly charged fees and interests existing in Plaintiff's account would be removed and a reinstallment plan would be configured to get Plaintiff back on track." Plf. Am. Compl. at 12-13, ¶¶ 30-32.

"[W]hen a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate." *Miller*, 2013 WL 4080717, at *7 (quoting *Kansa Reins. Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)). It is well-settled under Texas law that a loan agreement for more than $50,000, or a modification of such an agreement, is not enforceable unless it is in writing. TEX. BUS. & COMM. CODE § 26.02(b); *Martins v. BAC Home Loans Serv., L.P.*, 722 F.3d 249, 256-57 (5th Cir. 2013) (statute of frauds may be a defense to claim arising out of alleged loan modification). A claim for promissory estoppel may overcome the statute of frauds, but only if there is a promise to sign a written contract which had been prepared and which would itself satisfy the requirements of the statute of frauds. *Martins*, 722 F.3d at 257; *Miller*, 2013 WL 4080717, at *7. Thus, for promissory estoppel to create an exception to the statute of frauds, there is an additional requirement that the alleged promisor promised to sign a written document complying with the statute of frauds. *See Martins*, 722 F.3d at 257 (citing cases); *Hurd*, 880 F.Supp.2d at 761 (promise underlying affirmative claim for promissory estoppel must be a promise to sign an already existing written agreement that would itself satisfy the statute of frauds).

In this case, the alleged agreements underlying Plaintiff's promissory estoppel claims fall within the statute of frauds. Plaintiff's original petition stated that the principal balance of his mortgage loan in October 2005 was $161,257.18. *See* Plf. Orig. Pet. (Doc. 1, App. A-3) at 6, ¶ 16. Plaintiff's amended complaint alleges that unidentified account representatives for JPMC made verbal "debt servicing related promises" to correct errors with his loan account and prepare a reinstallment plan. *See* Plf. Resp. Br. at 4. However, Plaintiff fails to allege that JPMC promised to sign an agreement memorializing the alleged verbal promises regarding any loan workout or reconciliation. Such failure is fatal to his claim for promissory estoppel. *Miller*, 2013 WL 4080717,

11

at *7 (affirming dismissal of claims for promissory estoppel as barred by statute of frauds because Plaintiff failed to allege that lender or its agents promised to sign a document memorializing the oral promises).

Nor do Plaintiff's claims against JPMC for negligence survive dismissal. To state a claim for negligence, Plaintiff must allege (1) the existence of a legal duty, (2) a breach of that duty, and (3) damages proximately caused by the breach. *See, e.g., Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998). Here, Plaintiff alleges that JPMC owed him a duty to follow generally accepted accounting principles and assure that all his payments were properly applied. Plf. Am. Compl. at 13-14, ¶ 33. Under Texas law, however, there is no special relationship between a mortgagor and mortgagee that gives rise to a duty of care. *Milton v. U.S. Bank Nat'l Ass'n*, 508 F.App'x 326, 332 (5th Cir. Jan. 18, 2013). Plaintiff's negligence claim against JMPC fails because he has failed to allege any plausible legal duty on the part of JPMC.

Plaintiff's claim that JPMC charged him usurious interest in the form of added fees and charges for force-placed insurance in violation of the Texas Finance Code is preempted by the National Bank Act. 12 U.S.C. § 85, 86; *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8, 11 (2003). Section 85 of the National Bank Act sets limits on the interest rate that a national bank, such as JPMC, may charge on a loan. 12 U.S.C. § 85. Section 86 "sets forth the elements of a usury claim against a national bank, provides a two year statute of limitations for such a claim, and prescribes the remedies available to borrowers who are charged higher rates and the procedures governing such a claim." *Beneficial Nat'l Bank*, 539 U.S. at 11. In *Beneficial National Bank*, the Supreme Court held that the substantive and the remedial provisions of state usury laws are completely preempted by sections 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85-86. *Id.* The Supreme Court stated

12

that sections 85 and 86 "create a federal remedy for overcharges that is exclusive, even when a state complainant, as here, relies entirely on state law. Because §§ 85 and 86 provide the exclusive cause of action for such claims, there is, in short, no such thing as a state-law claim of usury against a national bank." *Id.*

Plaintiff also has failed to satisfy minimum pleading requirements for a violation of the RESPA. To state a claim under 12 U.S.C. § 2605(e), Plaintiff must allege facts showing that (1) JPMC is a loan servicer; (2) Plaintiff sent JPMC a valid qualified written request ("QWR"); (3) JPMC failed to adequately respond within the statutory period; and (4) Plaintiff is entitled to actual or statutory damages. *Hill v. Wells Fargo Bank, N.A.*, No. V-12-11, 2012 WL 2065377, at *5 (S.D. Tex. June 6, 2012). To satisfy the second element, Plaintiff must plead facts demonstrating that he sent a communication that (1) adequately identified his name and account; (2) requested information relating to the servicing of his loan; and (3) included a statement of the reasons for his belief that his account was in error. 12 U.S.C. § 2605(e)(1)(B)(i), (ii); *Hurd*, 880 F.Supp.2d at 768. Here, Plaintiff alleges that JPMC violated RESPA by failing to correct the force-placed insurance charges on his mortgage loan account within the statutorily prescribed period. But, Plaintiff's amended complaint does not identify any communication sent to JPMC that constitutes a QWR. Plaintiff contends that a letter from Misteli "confirms" that a QWR was sent. *See* Plf. Resp. to JPMC Mot. at 7. However, the excerpts in his complaint do not confirm that Misteli's letter was sent in response to a written request by Plaintiff, much less a written request that constitutes a QWR. Plaintiff further asserts that he can show he is in possession of such a document. *See* Plf. Resp. to JPMC Mot. at 7. However, he fails to so much as identify the intended recipient of the letter, specify the date on which it was sent, or describe the contents. *Hurd*, 880 F.Supp.2d at 768.

Only Plaintiff's claim against JPMC for breach of contract survives. To establish a claim for breach of contract under Texas law, a plaintiff must plead facts showing: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resulting damages to the plaintiff. *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex.App. -- Houston [1st Dist.] 2001, no pet.)). Additionally, the plaintiff must point to a specific provision of a specific contract that was allegedly breached. *See Chapa v. Chase Home Fin. LLC*, No. C10-359, 2010 WL 5186785, at *4 (S.D. Tex. Dec. 15, 2010).

Here, Plaintiff alleges that he entered into a mortgage loan agreement with WAMU that was evidenced by several written instruments, including a promissory note, a Security Agreement, a collateral protection insurance notice ("CPIN"), and a hazard insurance requirements and authorization ("HIRA") document. Plf. Am. Compl. at 2, ¶ 5. He alleges that he regularly made timely payments according to the terms of the parties' agreement. *Id.* at 3, ¶ 6; 12, ¶ 28. He further alleges that WAMU misapplied his mortgage payments and secretly charged him for force-placed hazard insurance in breach of the terms of the CPIN, the HIRA, and section 4 of the Security Agreement. *Id.* at 3-4, ¶ 8; 9, ¶ 20; 11-12, ¶¶ 26-27, 29. JPMC allegedly continued to charge for the improperly force-placed insurance and demanded payments in excess of the amount required under the loan documents. *Id.* at 4-5, ¶ 10-12; 12, ¶ 29. Plaintiff alleges that he has been forced to hire an attorney to defend against JPMC's improper demands and unlawful attempt to foreclose on his home. *Id.* at 5, ¶ 11; 8, ¶ 17; 20, ¶ 52. These allegations are sufficient to state a claim upon which relief can be granted. JPMC's motion to dismiss should be denied with respect to Plaintiff's claim for breach of contract.

## RECOMMENDATION

For the foregoing reasons, JPMC's Motion to Dismiss (Doc. 14) should be DENIED with respect to Plaintiff's breach of contract claim. In all other respects, JPMC's motion should be GRANTED. Barrett Daffin's Motion to Dismiss (Doc. 25) should be GRANTED in its entirety. Plaintiff's claims against JPMC and Barrett Daffin for promissory estoppel, negligence, negligent misrepresentation, violations of the Texas Finance Code, including the Texas Debt Collection Act and prohibitions against usury, and violations of the federal Real Estate Settlement Procedures Act and the federal Fair Debt Collection Practices Act should be DISMISSED with prejudice.[4]

SO RECOMMENDED, September 6, 2013.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

---

[4] Plaintiff's claims should be dismissed with prejudice because Plaintiff has already amended his complaint once and further amendment would be futile. *See Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) ("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit.").

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a de novo determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).